The next case is 21-2747 United States v. Orena Mr. Schoen, you may set up at the podium. You're welcome to leave your mask on or take it off as you like. And you have reserved three minutes for rebuttal. When you're ready. May it please the court. I'm David Schoen and with me at the table is my assistant, also my son, just graduated from law school last week. Congratulations. So I'm providing able assistance. Your honors, the precise legal issue before this court today is a discrete one. It has to do with the authority of the district judge with respect to the universe of information the court can consider in the context of a section 3582 motion. I want to talk a little bit about how we got here in order to at the end suggest a limiting principle to what we're proposing. Victor Arena is an 87-year-old man who served 30 years of a life sentence in prison. He's severely debilitated medical condition, terminal condition under the guidelines, advanced Alzheimer's. He doesn't know who he is from day to day. One day, according to the record, he thinks he's the president. The next day he's the warden. The next day he's an army general. He has every other health ailment known to womankind or mankind, I would suggest, including heart ailments, diabetes and so on. He needs full-time assistance. He's confined to a wheelchair. He cannot function without it. There's no dispute in this case that he has met the exhaustion requirements under 3582. There's no dispute, really, about the extraordinary and compelling circumstances with respect to the medical conditions. What's our standard of review of all this? I think that the standard of review for the precise question that we have is de novo, because it has to do specifically with the district court's misunderstanding, respectfully, of its authority with respect to the universe of information it can consider. What I mean by that is the district court specifically found, it's at page 152, note 4, that it must, it's constrained to accept the legitimacy of the conviction and the accuracy of the pre-sentence report from 30 years earlier. The reason I say, I'm cutting to the chase at the end, but I want to give you a little more background. The reason I say there's a limiting principle is because this case is unique in the sense that there is a whole abundant, what the court referred to, I think, taking my words, a vast array of evidence that's been adduced in the record, in the public record and in the court record, that completely undermines the integrity of the conviction and the accuracy of the PSR. For example- But your remedy is a habeas petition. That's right. Why are you here seeking compassionate release? Yes, Your Honor. A couple of reasons for that. One is our remedy, a remedy is a 2255 motion, and Mr. Arena, if he's not successful, will pursue that. However, I think his health is an immediate concern, and that won't be heard for another year or two. But you want to adjudicate what would happen in the 2255 here on a theory that it can move quickly in a way that, with the restraints of 2255 and surrounding case law, wouldn't allow you to. Respectfully, not exactly, Your Honor. All I'm suggesting, this is why I say there's a limiting principle here. All I've argued is that the court based this decision on two factors under 3553A, seriousness of the crime and just punishment. And it exclusively used the PSR from back then, which it quoted from, including, for example, that Mr. Arena killed Mr. Osero. We now know, the government turned over a document that there was a debriefing by their top echelon informant that Arena didn't kill him, so John Gotti killed him, and it had nothing to do with Arena. But so what's a responsible district court judge supposed to do when they've got this 3582, and there's arguments and even some evidence suggesting an undermining of certain facts going to guilt and conviction? What the court should do is consider it for whatever weight the court gives it. That's all we're suggesting. It has to be remanded for- But how do you know what weight to give it? I mean, do you have to have an evidentiary hearing? Possibly. You've got a factual dispute. Possibly. I think that's within the district court's discretion. But what the court can't do is this. It can't say, I'm denying this motion based on the facts in the PSR. Here's what they say, knowing today that those facts aren't true. For example, in this very case, there was a 2255 filed, and Judge Weinstein made findings in 1997. He found then, four years after the sentencing, that this is a very disturbing case and that he could decide it either way. He denied it, but he made certain findings. For example, he said it's extremely implausible that the FBI agent in the case would have actually intentionally provided information to an underboss of a mafia family to let him commit killings. Judge Corman made a finding that that's exactly what happened since then. So how on earth can we just credit this, the PSR, without at least considering the body of information? Due process cannot stand that. We can't stand the idea, the integrity of our process, of saying we're going to just close an eye to every development that's happened in the record already. I'm not suggesting that I ought to be able to put in all of the 2255 evidence we would put in. What we do have in the record already are findings from Judge Corman, findings from a judge in the New York State system. We have other documents that have all been put into the record already, some of which were in the record well before. There's a letter that went to Judge Weinstein from this top echelon informant saying we were allowed to go out there. We were given license to kill. We were given license to lie. That's what happened here. This whole case is topsy-turvy, and I said it in the papers, and I mean it, and I am familiar with the other competition for the honor. This is the single most corrupt prosecution in the history of the Justice Department. The lead FBI agent was indicted for multiple murders in the case. There was a corrupt relationship between that FBI agent and the underboss of the family that allowed the underboss to commit murders at will. None of this came out at trial. I'm sorry, Your Honor. And your client has done nothing about that until his most compassionate? Well, Your Honor, when the information first came out that there was this corrupt relationship, the client filed a 2255 and a Rule 33, and that's what Judge Weinstein considered, but he didn't have all this information. He had information only a part of the case. It was before the indictment of the FBI agent. Remember, the government seeks now to exploit its original withholding of the evidence by going back and saying, well, it's true. We did turn over this since then, and it's true Judge Corman found that, but we're stuck with the original PSR. There's no principled reason it should be stuck with the initial PSR. Judge Poole, are you set? Should any of the 2255 restrictions constrain the discretion you're asking us to give to district courts, or it doesn't matter because it's 3582, and so we get to make the arguments and district courts have discretion? I think in the context of 3582, given Brooker and given the First Step Act's purpose, the court has broad discretion as to the body of evidence and information it can consider. It can give it the weight that the court thinks appropriate. That's different from a 2255 where we have more confined standards. So the circuit denies a successive petition, go to the district court, put the evidence in play in a 3582, and you say district court has discretion to consider it, despite the fact that the circuit has denied the ability to bring a successive with respect to that. It actually could have. That's not this case. This case, you know, the circuit court is permitting a successive. You're granting successive. You said put that on hold because I don't want to do it either. That's right. I just have to return an answer I was giving before. The other reason we went this route is it's possible. There's authority that Mr. Arena can't participate in the resentencing that he's entitled to right now, de novo, or in the 2255 because he cannot assist. He doesn't understand. He doesn't understand the consequences of the sentencing. There's a case called United States v. Rothman out of the Southern District of Florida that says just that. This is his only vehicle, and it's certainly his only vehicle right now to address the terminal condition he's in right now. But the reason I say there's a limiting principle is because this record is unique. I'm asking only to consider the things that are in the record, in the public domain and in the record, and not turn a blind eye to them, not come up with a decision that we know is contrary to the facts. And that's why I say it's de novo standard because it's just about his authority. He said I cannot, I must credit the legitimacy of the conviction and the accuracy of the PSR. And just a direct answer to my question, that authority includes, that's okay, that authority includes if the circuit denies the ability to bring successive based on the same information, district court has the authority to grant, to consider and grant compassionate release based on precisely the same information. It may not be the answer that, I think the answer to that is yes. I think the answer to that is yes, that in the context of the First Step Act, this is another sort of safety valve in a sense. It may not have been good enough to get by the 2255 standard, but it is something that the district court can consider about the appropriateness of the sentence. What I wanted to say is, you know, Brooker itself considered whether Zulu's sentence was just too long. You can take that back. And Judge Pooler, Your Honor sat on a panel in January in a case called United States v. Campbell that remanded a case simply because first it considered some non-retroactive guideline changes and it said that wasn't a reason to, but because it might have been, given recent developments in the law, that maybe the original sentencing judge would have sentenced him differently. That's not so different from this case. That's an unpublished decision. 2822 Westlaw, 199954, January 24th, 2022. And there's a variety, there are a number of decisions just like that. I know I've... Thank you, Mr. Schiff. Thank you. You have three minutes for rebuttal. Yes, Your Honor. Ms. Lash. May it please the court. My name is Devin Lash and I'm here on behalf of the United States. The district court did not abuse its discretion in denying Mr. Arena's petition for compassionate release. It explicitly found that even in the face of extraordinary and compelling circumstances, a question that the court found it didn't need to reach here, that early release was not warranted. He was a longtime member of the Colombo crime family. He led that crime family. He triggered a bloody war. Do you deny what Mr. Schoen told us about the FBI agent who has since been tried and convicted, I understand? That's incorrect, Your Honor. And yes, I think that... Charges were dismissed, right? The case was dismissed and the court found that the only witness was completely incredible. I believe Mr. Schoen made many misstatements of the facts of the record of this case, decisions that this court has issued, that district courts have issued, and the history of this 30-year litigation about this relationship. So when Mr. Schoen says this is the most corrupt prosecution in the history of the federal government, you deny that? Yes, Your Honor. And... Supposing it was, supposing, you know, who makes that judgment? Supposing it was, would that change the way we would address and decide this case? No, Your Honor. The issue before this court is simply about the exercise of discretion at the district court and whether that was properly exercised. Well, but to be more precise, the issue is whether the district court has discretion to consider it. Government's argument is that it does not, right? That's right, Your Honor, and the district court correctly recognized that and said that these claims, claims that here challenge the validity of Mr. Urena's conviction, that the jury found in 1992 that the district court upheld at least twice and that this court upheld, as well as other courts with co-defendants in other circumstances. Do you think it was entirely appropriate to rely on the PSR from the previous conviction? Yes, Your Honor. Mr. Urena has the ability to challenge the findings in the PSR by bringing a 2255 petition. He has that vehicle open to him. It has been open to him since September 2020. We believe that those claims are meritless and time-barred, but nonetheless, he can make them. What this is is an end run around AEDPA and 2255 to manufacture some type of record for the district court to look at the 3553A factors. Your statutory argument, there's no language in 3582 that we should look to to come to that conclusion, right? Your statutory argument is essentially you have to look to 2255 and accepting this argument, accepting a reading of 3582 this broad would contradict the limitations inherent or prescribed in 2255. Do I have that right? There's nothing in 3582 that said that we should look to to say, nope, can't consider this. That's correct, Your Honor. We would refer you to the 2255. But taking a step back, what 3582 does say is that you need to consider the 3553A sentencing factors. And Mr. Urena's argument here is that he is actually innocent of these crimes. Courts do not apply the 3553A factors for a person who has not been convicted of the crime. The argument makes no sense here in that the 3553A factors are appropriately applied once someone has been convicted. It's when someone is up for sentencing. Your Honor, I would, to your point, Judge Nathan, this would be an end run around 2255. There are many reasons that the court shouldn't do that. This court and other courts have held that these legal claims challenging the validity of a conviction are not appropriate in a motion for compassionate release. How about a Brady claim? This Brady claim, Your Honor, should be, which is also meritless, it should be brought on a 2255. Let's say it's a Brady claim that's outrageous but couldn't be shown to have prejudiced the defendant. Is the district judge able to consider that? No, Your Honor. The district judge has to consider the 3553A factors and that goes to the conviction, the nature and seriousness of the offense, as well as the extraordinary and compelling circumstances that are proposed here. Could that be an extraordinary and compelling circumstance under 3582? Under this court's decision in Booker, district courts have wide latitude to consider what is extraordinary and compelling circumstances. Here, that's not the question before this court because the court didn't rely on the extraordinary and compelling circumstances to deny Mr. Arena's motion for release. But he could have. He could have relied on it, but he didn't. Well, Your Honor, the government conceded that arguably Mr. Arena meets the circumstances for extraordinary and compelling circumstances. But not because of claims of innocence or prosecutorial misconduct based on his health. Because of his medical claims. Correct, Your Honor. But to Judge Pooler's question, can the district court rely on claims of innocence in concluding extraordinary and compelling reasons? Your Honor, again, I direct you back to what I was saying about the 3553A factors. Claims of innocence would undermine a conviction. You don't apply the 3553A factors unless someone is guilty and is being sentenced. It makes no sense to say, let's apply the 3553A factors for a person who is actually innocent of a crime. In addition to this court and other courts' determination that these types of claims are not appropriate on compassionate release, this remedy makes no sense. In a 2255, the remedy would be a new proceeding. Here, it would be release. It could lead to sweeping consequences to allow compassionate release motions to subsume remedies that Congress has put in strict timing and procedural hurdles for, like direct and collateral appeals. To permit this as a basis for extraordinary and compelling circumstances suggests that once you run out of all of your legal challenges, you can raise seriatim motions for compassionate release. Can a judge in the compassionate release motion consider an overly lengthy sentence? I believe the dicta in Brooker, Your Honor, says that's one of the factors that a court could consider. Although, I'll point out, the panel in Brooker said in considering an unusually long sentence or a change in the law, they list as possibilities not to indicate that Mr. Zullo should be granted compassionate release or even to suggest that they necessarily apply. So I don't believe there's been a binding decision from this court on whether that does apply, but certainly this court has suggested that district courts can consider that. So if Congress reduces penalties but doesn't apply it retroactively, the same argument could be made in the 3582 context that you're making here, that taking that into account would be a circumvention of another congressional enactment. Yes, Your Honor, but I would say that that argument is very different than the argument that Mr. Arena raises here. His argument is that he is actually innocent of these charges that he has been convicted of and remains convicted of for 30 years. That goes to the integrity of the jury's verdict. An unusually long sentence doesn't speak to guilt or innocence. Thank you. Thank you. Mr. Shaw, you have three minutes on your buck. Yes, Your Honor. A couple of quick points. First of all, let's take the context. The government says in their brief, and this is their position, page 30, note 5, Brooker was wrongly decided. Secondly, the idea that this presents- For preservation. That's right. The idea that this presents some sort of safety valve and that that's a criticism of it is just wrong. That's what the First Step Act is all about for an extraordinary circumstance. Let me clear this up. We're not contending in this context that Mr. Arena is actually innocent. I believe he is, and I've contended that for 15 years on a pro bono basis. We're saying that this is lingering doubt as a concept. This is some, the circumstances that have surfaced since that are in the record are some circumstances for the court simply to consider as to, in balancing it, and if it considers it as an extraordinary and compelling circumstance, then maybe that would outweigh the 35-53 factors in this case in the district judge's mind. But remember, this is a motion for reduction of sentence. Just like in U.S. v. White, U.S. v. Caveira, when the defendant stands before the court, the court uses its point of view at that juncture to sentence him, and we don't ignore information that has come out since then. A couple of other points. What we're dealing with here, first of all, I obviously take great offense to the idea that any fact that I said earlier wasn't true. Again, if the government thinks there's competition for the most corrupt prosecution in history, I wish they would say it, and they should be sorry that they would suggest that there is. I've met with the inspector general at length about this case. They changed their entire guidelines for dealing with informants because of this case, and there wasn't just one witness who was utterly incredible. I have an excerpt from what the New York State judge wrote about this case. We have a full report, 100 pages, from Judge Leslie Crocker Snyder about an investigation into the corruption in this case. But it's true, isn't it, counsel, that the charges against the FBI agent were dismissed? I'm sorry if I misstated what you said. Yes, they were dismissed. He was indicted for multiple murders. During the course of the trial, they found that one witness, the girlfriend of the underboss of the family, had said a different story about one of the murders on one occasion, and the prosecutor voluntarily dismissed it. After that, the judge in the case made the findings that I've excerpted here about just how corrupt this was. We have the statement from the top echelon informant, their informant, that they were given license to kill and license to lie during the course of their cases. Judge Sifton found myopic sense of ethics from Andrew Weissman in this case. It's an extraordinary thing, extraordinary case. All we're saying here is consider this. Judge, you may be, at the end of the day, you might reject all of it. But when you're considering the seriousness of this crime and just punishment, consider the facts that have come out so far that undermine the integrity of that prosecution. We can't allow the government to withhold the documents, for example, the Brady material, and then say, well, no, you can't consider that the top echelon informant has told us in a debriefing that Arena not only didn't kill him, but it was against their will that John Gotti killed this guy and the Colombo family wanted nothing to do with that. You can't withhold that and then say, oh, by the way, stick with the PSR that found Arena killed O'Sara. That's a violation of due process under any standards. I want to make this last point, I think, in fairness, based on my training at least. I don't think that there's any directly contrary authority to this, but I do think there's an unpublished decision from this circuit that could be read to be contrary authority, and I think I have an obligation to bring it out. That's a case called United States, I would pronounce it Jacques, but I think the defender pronounced it Jacques, 2022 West Law, 894-695, Second Circuit, March 28th of 22. In that case, the guy raised two motions, 3582. In the first one, he raised his actual innocence and a number of other defects, and he didn't raise it in the second one, but both came up before this court, and the court said in that case that that's not something we're going to consider in 3582, but it's completely distinguishable because here we have the facts in the record. That was just one of these cases in which the defendant says, and by the way, I'd like to raise these other challenges. He didn't come in with a full record of things that now have been found by courts. Judge Corman found it. Look in the record. They didn't make that up. Judge Corman found that now he found that SCARPA, that exactly what Judge Weinstein found to be implausible happened in the case, that the VETEO was leaking information to SCARPA for SCARPA to commit his murders and other crimes. Thank you, counsel. Thank you. Thank you for being so well prepared, by the way. The decision is reserved in matters under advisement.